IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SAMANTHA TURNEY                                                                                  PLAINTIFF

           v.                                 Civil No. 10-2044

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

## I.    Factual and Procedural Background

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration denying her application for supplemental security income benefits ("SSI"), pursuant to § 1602 of Title XVI, 42 U.S.C. § 1381a ("the Act").[1]

Plaintiff protectively filed her SSI application on November 9, 2007, alleging a disability onset date of October 1, 2007, due to anti-social personality disorder, bipolar disorder and postpartum depression. Tr. 56, 103-105, 121, 126. At the time of her application, Plaintiff was nineteen years old with an tenth grade education with some resource classes. Tr. 13, 64, 121, 133. She has past relevant work as a retail cashier, fast food cashier, waitress, and in a department store portrait studio. Tr. 64, 127.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 66-69, 72-73, 103-105. At Plaintiff's request, an administrative hearing was held on March 23, 2009. Tr. 7-43. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable

---

[1] Plaintiff received SSI benefits as a child, beginning August 15, 2001, due to attention deficit hyperactivity disorder, oppositional defiant disorder, and affective disorder. Tr. 48-50. At the time of the favorable decision, Plaintiff was twelve years old. Tr. 48. Her benefits were terminated in April 2004. Tr. 122.

decision on October 23, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. 53-65. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 6, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff has a long history of mental health treatment as a child. Tr. 196-289, 532-545. She was hospitalized at Charter Behavioral Health System for over two weeks in March 2007 and for five days in May 1997. Tr. 329-348. She was hospitalized at Pinnacle Pointe Hospital for two weeks in August 1997 for aggressive and violent behavior, which resulted in diagnoses of attention deficit-hyperactivity disorder ("ADHD") and oppositional defiant disorder. Tr. 196-289. She was hospitalized at Harbor View Mercy Hospital from November 10, 1998, through December 8, 1998. Tr. 291-301. She was also hospitalized from October 23, 2000, through October 27, 2000, and from March 9, 2001, through March 19, 2001, resulting in diagnoses of post traumatic stress disorder ("PTSD") and major depression. Tr. 302-319. She also received day treatment at Harbor House and was placed in several group and foster homes. Tr. 311, 456. At the administrative hearing, Plaintiff's mother, Cheryl Biven, testified that Plaintiff had been hospitalized a total of eleven times during her childhood. Tr. 28.

In July 2007, at the age of nineteen, Plaintiff had a baby, after which time she developed postpartum depression and mood swings. Tr. 358-423. Jimmy Acklin, M.D., initially treated Plaintiff with Prozac and Klonopin, which gave her little relief. Tr. 379-384, 526-530. On March 11, 2008, Plaintiff admitted having paranoid thoughts, which dated back to her use of methamphetamines one year earlier. Tr. 524. She also admitted experiencing depression and

anxiety, although she denied suicidal thoughts or ideation.  Tr. 524.  She was prescribed Citalopram. Tr. 523-524.

Between October 15, 2007, and January 8, 2008, Plaintiff was treated at Perspectives Behavioral Health Management, LLC.  Tr. 466-490, 547-577.  At her initial evaluation, Plaintiff was alert, oriented, and coherent.  Tr. 471.  Plaintiff's thought processes, content and insight were normal, but her judgment was impaired.  Tr. 468-487.  She denied any suicidal ideation.  Tr. 471. At the time, she was taking Prozac and Klonopin.  Tr. 473.  Kim Davis, a licensed professional counselor ("LPC"), diagnosed Plaintiff with dysthymic disorder, PTSD-chronic, and past sexual abuse.  Tr. 469.  Davis gave Plaintiff a Global Assessment of Functioning ("GAF") score of 48.  Tr. 488.  She was prescribed Buspar over the course of her treatment.  Tr. 469.  Plaintiff was discharged from therapy on January 8, 2008, and instructed that she must complete drug counseling before returning to Perspectives Outpatient Counseling.  Tr. 547.  Upon discharge, Barbara Ellington, M.D., noted that Plaintiff made no progress while in treatment.  Tr. 547.

In December 2007, Plaintiff presented to Western Arkansas Counseling and Guidance Center ("WACGC") with complaints of depression and child-care difficulties.  Tr. 454-457.  She related a history of sexual and physical abuse as a child, as well as anger outbursts and social anxiety.  Tr. 454.  She reported hearing voices and having paranoid feelings.  Tr. 454.  When asked about employment, Plaintiff stated that she had worked at eleven jobs in the last five years, with the longest being four months at Wal-Mart.  Tr. 455.  When asked about drug use, Plaintiff admitted a history of alcohol, marijuana, and methamphetamine usage, but denied any current use.  Tr. 455.  She did report illegal use of Xanax and Hydrocodone.  Tr. 456.  At the time of evaluation, Plaintiff was not taking any prescribed medication.  Tr. 456.

Michael Mize, LPC, noted that Plaintiff was continuously restless and anxious throughout the interview. Tr. 456. Plaintiff was alert and oriented, but distractible and pessimistic. Tr. 456. Thought processes were circumstantial with a flight of ideas. Tr. 456. Mize noted delusions involving persecution by peers and authority. Tr. 456. Attention and concentration were moderately impaired., and judgment and insight were poor. Tr. 456. Suicide potential was minimal. Tr. 456. Mize noted possible confabulation, which may have affected Plaintiff's reliability. Tr. 456. He found Plaintiff's intellectual ability to be within the average range. Tr. 456. He diagnosed her with generalized anxiety disorder and potential mood disorder, postpartum. Tr. 456-457. He estimated Plaintiff's GAF score at 45 and recommended individual therapy as well as medication management. Tr. 456-457. On January 8, 2008, Plaintiff returned to WACGC and reported being ordered to attend drug counseling after being charged with public intoxication by methamphetamine and theft of property after she stole from her mother. Tr. 458. Additionally, Plaintiff's mother had been given permanent custody of her infant son. Tr. 30, 455. There are no further treatment notes from WACGC in the record.

In January 2008, Plaintiff underwent a psychological examination with Robert L. Spray, Jr., Ph.D. Tr. 491-496. Plaintiff stated that she had been sexually abused by a neighbor from ages three to eleven. Tr. 491. She was hospitalized at Charter Vista and Harbor View, received treatment at Haberton House for six months, and was placed in a group home at the age of fourteen. Tr. 491-492. She was currently taking Effexor. Tr. 492. Dr. Spray noted that Plaintiff was "rather obsessed about her boyfriend." Tr. 493. Otherwise, thoughts were logical, relevant, and goal-oriented. Tr. 493. On the Wechsler Adult Intelligence Scale-III, Plantiff received a verbal IQ of 77, a performance IQ of 79, and a full-scale IQ of 76, which was within the borderline range of intelligence. Tr. 494. Dr.

Spray noted that although Plaintiff was cooperative, she seemed agitated and nervous at times. Tr. 494. Dr. Spray also noted that although Plaintiff had a history of multiple traumas, she did not meet the criteria for PTSD. Tr. 494. He assessed Plaintiff with social phobia and dysthymia in Axis I, and borderline personality disorder with dependent features and borderline intellectual functioning in Axis II. Tr. 495. Further, he estimated Plaintiff's GAF score at 41-50. Tr. 495. In a job setting, Dr. Spray noted that Plaintiff would likely be distracted by excessive worry about being around other people, anxiety-based symptoms, and rumination about her son and boyfriend. Tr. 495-496. He also believed that Plaintiff would not likely persist with tasks she simply did not want to do. Tr. 496.

In a Psychiatric Review Technique dated February 29, 2008, Dan Donahue, an agency specialist, considered Listings 12.04 (Affective Disorders), 12.05 (Mental Retardation), 12.06 (Anxiety-Related Disorders), and 12.08 (Personality Disorders), but determined that Plaintiff did not meet the "B" criteria, as she had moderate restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration. Tr. 500-513. He also found that Plaintiff did not meet the "C" criteria for listing 12.04. Tr. 511.

In an accompanying Mental RFC Assessment, Donahue found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work

place, and set realistic goals or make plans independently of others. Tr. 516. He found that Plaintiff was not significantly limited in all other areas. Tr. 516. Based on this assessment, Donahue found that Plaintiff could perform work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct and concrete. Tr. 516.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether

the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.     Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since November 9, 2007, the application date. Tr. 58. At step two, the ALJ found that Plaintiff suffered from mood disorder and anxiety-related disorder, both of which were considered severe impairments under the Act. Tr. 58. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 58-59. At step four, the ALJ found that Plaintiff had the RFC to perform unskilled work where interpersonal contact is incidental to the work performed and there is no contact with the general public. Tr. 59-63. After eliciting testimony from a vocational expert, the ALJ determined Plaintiff could perform the requirements of representative occupations such as poultry production worker, of which there are 100,000 jobs nationally and 15,000 jobs locally, production line assembler, of which there are 583,000 jobs nationally and 11,000 jobs locally, and sewing machine operator, of which

there are 250,000 jobs nationally and 2,500 jobs locally. Tr. 64-65. Accordingly, the ALJ determined Plaintiff was not under a disability at any point from November 9, 2007, the application date, through October 23, 2009, the date of his final decision. Tr. 65.

On appeal, Plaintiff contends that the ALJ: (1) improperly determined her RFC; (2) improperly dismissed her subjective complaints; and (3) posed an incomplete hypothetical question to the vocational expert ("VE"). *See* Pl.'s Br. 10-17.

    A.  <u>Plaintiff's RFC</u>

Plaintiff contends the ALJ made an improper RFC assessment concerning her mental limitations. *See* Pl.'s Br. 10-16. We disagree. At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

In making his RFC determination, the ALJ gave substantial weight to the opinions of Dr. Spray, Plaintiff's counselor at Perspectives, and the state agency consultants. Tr. 63. Plaintiff underwent a psychological evaluation with Dr. Spray on January 28, 2008. Tr. 491-496. Dr. Spray diagnosed Plaintiff with social phobia and dysthymia in Axis I and borderline intellectual functioning

and borderline personality disorder with dependent personality features in Axis II. Tr. 495. Dr. Spray noted that Plaintiff had no difficulties with self-care or activities of daily living and was able to communicate adequately. Tr. 495. Further, he noted that although Plaintiff's concentration was somewhat impaired, it was not severely so; however, Plaintiff would likely be distracted by others in a job situation. Tr. 495-496. Dr. Spray also found that Plaintiff would not likely persist with tasks she simply did not want to do and would complete tasks at her own pace, which may be variable depending on the task, her motivation, and her level of anxiety at the time. Tr. 496.

On October 15, 2007, Plaintiff went to an initial evaluation at Perspectives Behavioral Health Management. Tr. 466-490, 547-577. Plaintiff was diagnosed with dysthymic disorder and PTSD, and given a prescription for Buspar. Tr. 469. Her counselor noted that Plaintiff's strengths included her intellectual functioning, sense of humor, personable or engaging presentation, hygiene, ability to self-care, and willingness and ability to participate in treatment. Tr. 549. Although Plaintiff was referred for individual therapy, there is no indication that she regularly attended therapy sessions. Tr. 488. She was discharged from therapy on January 8, 2008, with instructions to complete drug counseling before she could return to Perspectives. Tr. 547.

On February 29, 2008, a state agency consultant, Dan Donahue, reviewed Plaintiff's treatment records and determined that she could perform unskilled work where interpersonal contact is incidental to the work performed. Tr. 516.

In this instance, the ALJ adequately took into account Plaintiff's social and intellectual difficulties by limiting her to unskilled work where interpersonal contact is incidental to the work performed and there is no contact with the general public. Significantly, no physician, treating or otherwise, opined that Plaintiff was unable to work. *See Raney v. Barnhart*, 396 F.3d 1007, 1010

(8th Cir. 2005) (consulting physician's RFC assessment supported the ALJ's RFC finding when none of the claimant's treating physicians opined that she was unable to work). Moreover, as discussed more thoroughly in the next section, Plaintiff has not sought routine treatment or taken medication consistently.

Plaintiff argues that the ALJ's mental RFC assessment was insufficient, noting that there are over 400 pages of medical records documenting her mental health treatment. *See* Pl.'s Br. 10-11. For SSI benefits, the relevant time period begins on the date of the application. *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989). Although Plaintiff received extensive mental health treatment as a child, she received relatively little treatment as an adult. Here, there are few treatment records after November 9, 2007, the application date. Thus, most of Plaintiff's treatment records are outside the relevant time period.

After considering all the relevant evidence, we conclude that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence). None of Plaintiff's medical records support her contention that she is totally disabled. Plaintiff failed to demonstrate that she is unable to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's mental RFC determination.

B. <u>Plaintiff's Subjective Complaints</u>

Plaintiff contends the ALJ failed to make express credibility determinations regarding her subjective allegations. *See* Pl.'s Br. 16-17. We disagree.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). In discounting Plaintiff's subjective complaints, the ALJ noted that although Plaintiff went to several psychological evaluations, there is no evidence that she sought regular, continuing treatment during the relevant time period.[2] *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain

---

[2] The court is cognizant of the Eighth Circuit's holding in *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009) (ALJ must take into account whether a mentally ill claimant's failure to comply with prescribed medication results from the mental illness itself). Unlike the situation in *Pate-Fires*, however, the facts here demonstrate that Plaintiff was fully aware of her need to take medication and receive treatment, but failed to do so only because of cost concerns. Tr. 22.

medications."); *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (claimant failed to maintain a consistent treatment pattern for her alleged mental impairments). Plaintiff responds that she has no insurance and cannot afford regular treatment. *See* Pl.'s Br. 10-11. However, she has not sought treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial situation. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Additionally, Plaintiff's daily activities are inconsistent with her allegations of complete disability. Although Plaintiff claims she cannot be around others, she testified that she lives with a roommate, with whom she watches movies and listens to music, she visits friends, and she attends church. Tr. 26, 495. *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). Finally, Plaintiff's subjective complaints are simply inconsistent with the objective evidence in the record. Tr. 63. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints). These are all valid considerations, and the ALJ made no error in assessing Plaintiff's credibility.

Plaintiff's lack of treatment and reported activities, as well as the objective evidence as a whole, cast doubt on the validity of her testimony. Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

    C. Hypothetical Question

Plaintiff argues that the ALJ's hypothetical question did not accurately reflect her limitations. *See* Pl.'s Br. 14-16. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ in his RFC analysis. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). Thus, we find no merit in this argument.

**V.**    **Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

    ENTERED this 23rd day of March 2011.

    */s/ J. Marschewski*
    HON. JAMES R. MARSCHEWSKI
    CHIEF U.S. MAGISTRATE JUDGE